IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JAMES B. MCCLUNG, | Case No. 6:16-cv-00751-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

**BECKERMAN, Magistrate Judge.**

James McClung ("McClung") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner" or "SSA") denial of his application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). For the reasons that follow, the Court affirms the Commissioner's decision because it is free of legal error and supported by substantial evidence.

**BACKGROUND**

McClung was born in August 1962, making him fifty years old on September 14, 2012, the amended alleged disability onset date. McClung has a high school education and no past relevant work experience. In his application, McClung alleges disability due primarily to nerve damage in his left arm, posttraumatic stress disorder ("PTSD"), schizoaffective disorder, and bipolar disorder.

On July 22, 2010, roughly two years before the alleged onset of disability, an x-ray of McClung's left elbow revealed an "[o]lecranon fracture with associated effusion." (Tr. 442.) An emergency room physician treated McClung with a splint and sling. (Tr. 445.) McClung later met with a "surgical specialist in Portland" and they agreed "to let [the elbow fracture] heal without surgery." (Tr. 432; *see also* Tr. 788, noting that a subsequent x-ray suggested it was "less likely to need operative repair").

On April 20, 2012, McClung had x-rays taken of his lumbar spine, knees, and hips. The x-rays of McClung's hips were "within normal limits," the x-rays of McClung's knees appeared "[n]ormal for [his] age," and the x-ray of McClung's lumbar spine was "[o]verall negative." (Tr. 368-71, 589.)

On October 31, 2012, McClung appeared for a consultative examination with Dr. James McHan ("Dr. McHan"). (Tr. 321-25.) Dr. McHan examined and interviewed McClung, and reviewed a health summary from the U.S. Department of Veterans Affairs (the "VA") dated October 11, 2012. Dr. McHan noted that McClung complained of pain in his wrists, arthritis in his knees and back, and a rash; scored a thirty out of a thirty on a mini-mental status examination; and exhibited full strength in his "upper and lower extremities bilaterally except with slight decrease in the left hand where there is a slight atrophy of the thenar eminence

muscle of the thumb."[1] (Tr. 324.) Based on his examination, Dr. McHan opined that McClung can stand and walk for less than two hours; sit without limitation; lift and carry ten pounds occasionally and frequently; occasionally climb, balance, stoop, kneel, crouch, and crawl; never engage in manipulative activities with his left hand, but occasionally reach, handle, finger, or feel with the right hand; and needs to limit working at heights and with heavy machinery, and avoid dust, fumes and gases. (Tr. 325.)

On January 2, 2013, McClung appeared for an individual counseling session at South Lane Mental Health. McClung reported that his "most concerning" symptoms were "being [in] a depressed mood, anger and feeling anxious, or 'having compulsions[.]'" (Tr. 732.) McClung also reported being "in a more positive place" and feeling less depressed after his wife returned home. (Tr. 732.)

On January 11, 2013, Dr. Joshua Boyd ("Dr. Boyd"), a non-examining state agency psychologist, completed a psychiatric review technique assessment. (Tr. 77.) Dr. Boyd found that the limitations imposed by McClung's impairments failed to satisfy listings 12.03 (schizophrenic, paranoid, and other psychotic disorders), 12.06 (anxiety-related disorders), or 12.09 (substance addiction disorders).

Also on January 11, 2013, Dr. Boyd completed a mental residual functional capacity assessment based on his review of the record. (Tr. 81-82.) Dr. Boyd found that McClung was not significantly limited in fifteen categories of mental activity and moderately limited in eight. Dr. Boyd added that McClung is capable of understanding, remembering, and sustaining the concentration necessary to complete simple tasks; McClung should not work with the general

---

[1] A score of thirty on a mental status examination indicates "no cognitive deficits." *Meza v. Comm'r Soc. Sec. Admin.*, No. 6:15-cv-02181-MA, 2017 WL 916446, at *7 (D. Or. Mar. 8, 2017).

public or be in close proximity to co-workers; and McClung "could use help setting realistic goals." (Tr. 82.)

On January 14, 2013, Dr. Linda Jensen ("Dr. Jensen"), a non-examining state agency physician, completed a physical residual functional capacity assessment. (Tr. 78-80.) Dr. Jensen found that McClung could lift and carry twenty pounds occasionally and ten pounds frequently; stand, sit, or walk up to six hours in an eight-hour workday; push or pull on a frequent basis with the left upper extremity; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds; and frequently handle and finger with his non-dominant left hand. Dr. Jensen added that McClung does not suffer from visual or communicative limitations, but he needs to avoid concentrated exposure to hazards, fumes, odors, dusts, gases, and poor ventilation.

On February 19, 2013, Dr. William Habjan ("Dr. Habjan"), a non-examining state agency physician, issued a second physical residual functional capacity assessment, wherein he agreed with Dr. Jensen's conclusion that McClung can lift and carry twenty pounds occasionally and ten pounds frequently; stand, sit, or walk up to six hours in an eight-hour day; frequently push or pull with the left upper extremity; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds; and frequently handle and finger with his non-dominant left hand. (Tr. 93-95.) Dr. Habjan also agreed with Dr. Jensen's conclusion that McClung does not suffer from visual or communicative limitations, but he needs to avoid concentrated exposure to hazards (machinery, heights, etc.), fumes, odors, dusts, gases, and poor ventilation.

On February 21, 2013, Dr. Irmgard Friedburg ("Dr. Friedburg"), a non-examining state agency psychologist, issued a psychiatric review technique assessment, agreeing with Dr. Boyd's

conclusion that McClung's mental impairments failed to satisfy listings 12.03, 12.06, and 12.09, and noting that McClung's impairments also failed to satisfy listing 12.04 (affective disorders). (Tr. 91-92.)

Also on February 21, 2013, Dr. Friedburg issued a second mental residual functional capacity assessment, agreeing with Dr. Boyd's initial determination that McClung is moderately limited in five of twenty categories of mental activity and not significantly limited in fifteen. (Tr. 95-97.)

On March 11, 2013, x-rays of McClung's right elbow revealed "[n]o acute fracture or malalignment," "[n]o joint effusion," and "[s]oft tissue swelling . . . at the posterior aspect of the elbow." (Tr. 770.)

On July 22, 2013, McClung had images taken of his thoracic spine, which revealed "mild anterior wedging of the T8 vertebral body," "[n]o destructive process," and "no subluxation." (Tr. 597.) McClung also had images taken of the right side of his rib cage based on complaints of pain, but "[t]he cause for the patient's [pain] symptoms [was] not detected" by those images. (Tr. 596.)

On July 30, 2013, Rebecca Podhora ("Podhora"), a mental health nurse practitioner, noted that she had recently visited with McClung for thirty minutes; that McClung's current Global Assessment of Functioning ("GAF") score was forty-two; that McClung continues "to use substances [and] is drug seeking"; and that McClung seemed "to understand the possible risks/benefits of drug treatment and agree[d] to consent to the treatment and/or options."[2] (Tr. 506-08.)

---

[2] A GAF score of forty-two reflects "severe symptoms or serious impairment in social or occupational functioning." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 368 (6th Cir. 2013) (citation omitted).

On September 3, 2013, McClung presented for a follow-up visit with Podhora. In her treatment note, Podhora observed that McClung complained of "pain issues." (Tr. 693.) Podhora, however, also noted that McClung's gait was within normal limits "with no indication of limping or shuffling," that McClung reported that he "walks around Cottage Grove about '[thirty] miles per day,'" which takes "a few hours," and that McClung reported that he is "kind of like the town Security Guard" because he watches over property and reports problems to the police chief. (Tr. 693.)

On January 14, 2014, McClung presented for a mental health assessment with Deborah Hardwick ("Hardwick"), a qualified mental health professional. During the assessment, McClung reported "an increase in both depressed mood and anxiety," which prevented him from being "able to do his own shopping" or "be in any place with a crowd [of] . . . more than [three] people at a time." (Tr. 868.) Hardwick noted that her interview of McClung was consistent with reported diagnoses of PTSD and bipolar disorder, and she assigned a GAF score of fifty-five.[3] (Tr. 870.)

On January 31, 2014, Disability Determination Services ("DDS") referred McClung to Dr. Jennifer Metheny ("Dr. Metheny"), a licensed psychologist, for a psychodiagnostic evaluation regarding "issues related to schizoaffective disorder, PTSD, and bipolar disorder." (Tr. 314-19.) Based on her examination and review of certain medical records, Dr. Metheny diagnosed McClung with schizoaffective disorder, PTSD, and alcohol and cannabis abuse, and concluded that McClung did "not appear to meet criteria for a bipolar spectrum disorder." (Tr. 318-19.)

---

[3] A GAF score of fifty-five "indicates at least moderate symptoms or moderate difficulty in social, occupational, or social functioning." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

On February 6, 2014, McClung visited his primary care physician, Dr. Gerald Barker ("Dr. Barker"). Dr. Barker noted that McClung's mood and affect were good, his mental status was "quite good," he seemed "in touch with reality," and his extremities were "[a]ctually quite good with good range of motion through he complains of pain in both elbows and his left wrist." (Tr. 862.)

On February 22, 2014, McClung visited the emergency department, complaining of pain "basically in all locations of his body." (Tr. 853.) After reviewing the "Oregon prescription drug monitory website," Dr. Daniel Kranitz ("Dr. Krantiz") agreed to provide McClung with a limited Vicodin prescription, but he also informed McClung that he "would not represcribe narcotics for him if [McClung were to return to the emergency department] again with similar symptoms." (Tr. 854-55.)

On April 15, 2014, McClung had x-rays taken of his cervical spine based on complaints of neck pain. The images revealed "[n]o abnormal motion . . . with flexion or extension," good anatomic alignment, no subluxation, no fracture, "maintained" disc spaces, and "[n]o foraminal stenosis." (Tr. 865.)

On June 6, 2014, McClung appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). (Tr. 34-68.) McClung testified that he does "not like large towns" or "crowds," he has a friend who assists with grocery shopping, he has never been told that he has "a drinking problem," he last worked in 1991 and has been "collecting cans" since that time, he lives in a rental trailer, he receives food stamps and financial assistance from the VA, he recently quit drinking, and he smokes cigarettes and marijuana. (Tr. 45-51.) McClung also testified that he collects cans "four or five days a week" depending on how his back and "legs are doing," that he walks about a mile to "get the cans," that he experiences numbness and aching in his left arm

and hand due to nerve damage, and that his medications have helped control his mood swings and keep him "more level." (Tr. 52-58, 61.)

The ALJ posed a series of hypothetical questions to a Vocational Expert ("VE") who testified at McClung's hearing. First, the ALJ asked the VE to assume that a hypothetical worker of McClung's age, education, and work experience could perform work that involved: (1) occasional climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) frequent handling and fingering with the non-dominant left hand; (4) occasional exposure to fumes, odors, dusts, gases, and poor ventilation; (5) occasional exposure to workplace hazards, such as unprotected heights and moving mechanical parts; (6) simple and routine tasks; (7) occasional interaction with co-workers; and (8) "no interaction with the general public such that the individual is limited to working in relative isolation." (Tr. 64.) The VE testified that the hypothetical worker could be employed as a basket filler, assembly machine tender, and protective clothing issuer. The VE added that there are 37,881 basket filler jobs, 21,720 assembly machine tender jobs, and 36,126 protective clothing issuer jobs available in the national economy.

Second, the ALJ asked the VE to assume that the hypothetical worker described above was limited to sedentary work. The VE testified that the hypothetical worker could be employed as a "polisher [of] eye glass frames" and final assembler. (Tr. 65.) The VE further testified that there are 70,450 eye glass polisher jobs and 35,340 final assembler jobs available in the national economy.

Third and finally, the ALJ asked the VE to assume that the hypothetical worker could not reach, handle, finger, or feel with the non-dominant left hand, would be off task (i.e., not engaged in productive work activities) "at least 25 percent of an eight-hour day," and would be

absent four or more days per month. (Tr. 66.) The VE testified that such limitations would preclude gainful employment.

In a written decision issued on August 28, 2014, the ALJ applied the five-step sequential process set forth in 20 C.F.R. § 416.920(a)(4), and found that McClung was not disabled. (Tr. 19-29.) The Social Security Administration Appeals Council denied McClung's petition for review, making the ALJ's decision the Commissioner's final decision. McClung timely appealed.

## THE FIVE-STEP SEQUENTIAL PROCESS

### I. LEGAL STANDARD

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are as follows:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal [one of the listed impairments]? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25. The claimant bears the burden of proof for the first four steps in the process. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of the first four steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

PAGE 9 – OPINION AND ORDER

The Commissioner bears the burden of proof at step five of the process, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

## II.  THE ALJ'S DECISION

The ALJ first determined that McClung had not engaged in substantial gainful activity since September 14, 2012, the day he filed his application for benefits. At the second step, the ALJ found that McClung had the severe impairments of depressive disorder, PTSD, schizophrenia, a "history of left elbow fracture," left-side carpal tunnel syndrome, polysubstance abuse disorder, and degenerative disc disease. (Tr. 21.) At the third step, the ALJ found that McClung did not have an impairment or combination of impairments that met or equaled one of the Listed Impairments.

The ALJ next assessed McClung's residual functional capacity ("RFC") and found that he could perform light exertion work that involves (1) lifting and carrying up to twenty pounds occasionally and ten pounds frequently; (2) standing, walking, and sitting up to six hours in an eight-hour workday; (3) occasional climbing of ramps and stairs; (4) no climbing of ladders, ropes, and scaffolds; (5) frequently handling and fingering with the non-dominant left hand; (6) occasional exposure to workplace hazards (e.g., unprotected heights and moving mechanical parts), fumes, dusts, gases, or poor ventilation; (7) simple and routines tasks; (8) occasional interaction with co-workers; and (9) no interaction with the public "such that he is limited to working in relative isolation." (Tr. 24.) At the fifth step, the ALJ concluded that there were other jobs existing in significant numbers in the national economy that McClung could perform, such

as a "[b]asket filler," "[a]ssembler, machine tender," and "[p]rotective clothing issuer." (Tr. 28-29.) Accordingly, the ALJ determined that McClung was not disabled within the meaning of the Social Security Act.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett*, 180 F.3d at 1097). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* If the evidence as a whole can support more than one rational interpretation, the district court must uphold the ALJ's decision and may not substitute its judgment for the judgment of the ALJ. *Bray*, 554 F.3d at 1222 (citing *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## DISCUSSION

In this appeal, McClung argues that the ALJ erred by: (1) failing to provide clear and convincing reasons for discounting McClung's subjective symptom testimony; and (2) failing to offer legally sufficient reasons for discounting Dr. McHan's medical opinion evidence. As explained below, the Court concludes that the Commissioner's decision is free of legal error and

PAGE 11 – OPINION AND ORDER

supported by substantial evidence. Accordingly, the Court affirms the Commissioner's denial of benefits.

## I. CREDIBILITY DETERMINATION

### A. Applicable Law

Absent an express finding of malingering, an ALJ must provide clear and convincing reasons for rejecting a claimant's testimony:

> Without affirmative evidence showing that the claimant is malingering, the [ALJ]'s reasons for rejecting the claimant's testimony must be clear and convincing. If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's [subjective] complaints.

*Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 597 (9th Cir. 1999) (citations omitted). Clear and convincing reasons for rejecting a claimant's subjective symptom testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 6:11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))).

///

///

## B. Application of Law to Fact

There is no affirmative evidence that McClung is malingering and, therefore, the ALJ was required to provide clear and convincing reasons for discrediting McClung's symptom testimony. Upon review, the Court concludes that the ALJ satisfied the clear and convincing reasons standard.

First, the ALJ discounted McClung's symptom testimony because it is inconsistent with his daily activities. (Tr. 25-26.) "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Martin v. Colvin*, No. 3:14–cv–01603–SB, 2016 WL 890106, at *8 (D. Or. Feb. 9, 2016) (citation omitted). It was reasonable for the ALJ to conclude that McClung's reported activities undermined his claim of disability. Indeed, as the ALJ noted in his written decision, McClung complains of "severe mental impairments" that have resulted in "significant limitations with social functioning," but the record reveals that McClung's social functioning is not as limited as alleged. (Tr. 25.) Substantial evidence supports the ALJ's finding. (*Compare* Tr. 233, alleging that McClung does "not like to be around people," which makes "it impossible for [him] to be in a 'normal' work environment with other people," Tr. 868, informing a medical provider that mental impairments prevent McClung from being "able to do his own shopping" or "be in any place with a crowd [of] . . . more than [three] people at a time," *with* Tr. 693, stating that McClung watches over his friends' property, acts "like the town Security Guard," and reports problems to the police chief, Tr. 702, noting that McClung "is very engaged in his community, with lots of supports and connections, which keeps him from isolating," Tr. 765, noting that McClung "said he had lots of friends in the area that would be able to bring him" to get treatment every eight hours, Tr. 812, noting that McClung had attended "several social events" with his "friends.")

PAGE 13 – OPINION AND ORDER

Furthermore, the ALJ noted in his written decision that McClung claims to be disabled as a result of "significant physical limitations," which was inconsistent with McClung's near-daily canning activities. (Tr. 26.) Substantial evidence supports the ALJ's finding. (*Compare* Tr. 233, 239, alleging that McClung has "physical impairments that make many activities difficult or impossible," that McClung cannot squat due to knee impairment and pain, that McClung cannot bend without experiencing pain in his back and hips, and that McClung's ability to stand is limited due to back and knee pain, *with* Tr. 48-53, indicating that McClung has "gotten by collecting cans" since 1991, and collects cans "[a]t least four or five days a week," which takes several hours and requires him to walk a mile into town, bend over, and carry a lightweight bag, Tr. 323, stating that McClung was able to squat on physical examination, Tr. 648, stating that McClung reported that "he walks about [fifteen] miles daily," Tr. 693, stating that McClung reported that he "walks around Cottage Grove about '[thirty] miles per day'" in order to collect cans, which takes "a few hours").

Second, the ALJ discounted McClung's testimony based on a lack of corroborating medical evidence. *See Nikitchuk v. Astrue*, 240 F. App'x 740, 742 (9th Cir. 2007) (explaining that it is appropriate for an ALJ to consider a "lack of medical evidence corroborating" a claimant's "testimony as one factor in [a] credibility determination"). For example, the ALJ concluded that McClung's "allegations are out of proportion with the objective evidence," noting, among other things, that McClung alleges (1) "limits stemming from his memory and concentration," yet he scored a thirty out of thirty (no cognitive deficits) on a mental status examination; and (2) significant physical limitations, yet imaging of his lumbar spine showed

"only minimal spondylosis."[4] (Tr. 25-26; *see also* Tr. 22, noting that there was a lack of objective evidence to support the "alleged significant limitations stemming from pain in [McClung's] knees and ankles.") Substantial evidence supports the ALJ's findings. (*Compare* Tr. 233, 238-39, alleging that McClung suffers from deficits in memory, concentration, and the ability to complete tasks and follow instructions, and from back, knee, and hip pain that impairs his ability to squat, stand, and bend, *with* Tr. 322, noting McClung's perfect score on a mental status examination, Tr. 368-71, 589, noting that x-rays taken of McClung's hips were "within normal limits," x-rays taken of his knees appeared "[n]ormal for [his] age," and x-rays of his lumbar spine were "[o]verall negative," Tr. 596-97, noting that images of McClung's thoracic spine showed "mild anterior wedging of the T8 vertebral body," "[n]o destructive process," and "no subluxation," and that McClung complained of pain on the right side of his rib cage, but the "cause" was "not detected" by imaging).

Third, the ALJ's adverse credibility determination was based, in part, on contradictory medical opinions. See *Scales v. Colvin*, No. 16-1107, 2017 WL 3021043, at *13 (S.D. Cal. July 14, 2017) (concluding that the ALJ satisfied the clear and convincing reasons standard, and noting that an ALJ may consider "medical opinions contradicting [a] claimant's pain testimony in assessing credibility"); *see also Nikitchuk*, 240 F. App'x at 742 (affirming adverse credibility determination, and noting that "the ALJ appropriately considered the affirmative medical evidence in the record that contradicted [the claimant's] testimony"). For example, the ALJ assigned significant weight to the opinions of the state agency medical consultants, noting that

---

[4] "Lumbar spondylosis is a spine condition that describes the natural deterioration of the lower spine due to age and compression. Most patients over the age of [fifty] have some form of mild to progressive spondylosis in the lumbar spine. However, most cases of spondylosis do not result in any symptoms." *Hutcherson v. Colvin*, No. 15-5259, 2016 WL 2885853, at *1 n.1 (C.D. Cal. May 17, 2016) (citation and ellipses omitted).

they concluded that McClung was capable of performing work at a light exertion level, and that their opinions were consistent with McClung's performance on his mental status examination, McClung's ability to interact appropriately with treatment providers, and the objective medical evidence. (Tr. 27.)

Based on the foregoing, the Court declines to second-guess the ALJ's credibility determination because it is reasonable and supported by substantial evidence. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("[T]he ALJ's interpretation of [the claimant's] testimony may not be the only reasonable one. But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it."); *Dowell v. Berryhill*, No. 16-614-SI, 2017 WL 1217158, at *5 (D. Or. Apr. 3, 2017) (noting that the court may uphold an ALJ's credibility determination even if some of the reasons the ALJ provided were not legally sufficient).

## II. MEDICAL OPINION EVIDENCE

### A. Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). In the event "a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Ryan v. Comm'r Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citation omitted).

B.  **Application of Law to Fact**

McClung argues that the ALJ failed to provide legally sufficient reasons for rejecting Dr. McHan's residual functional capacity assessment dated October 31, 2013. (Tr. 325.) The Court disagrees.

Dr. McHan's residual functional capacity assessment conflicts with, among other things, the assessments completed by the non-examining state agency doctors, none of whom opined that McClung is unable to lift or carry more than ten pounds on an occasional basis or walk in excess of two hours. (*Compare* Tr. 325, *with* Tr. 79, *and* Tr. 93.) Therefore, the ALJ needed to provide specific and legitimate reasons for discounting Dr. McHan's residual functional capacity assessment. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[I]n the case of a conflict 'the ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician.'"); *Kilian v. Barnhart*, 226 F. App'x 666, 668 (9th Cir. 2007) ("Kilian's contention that the ALJ erred when he discounted her treating physician's opinion is flawed because the treating physician's opinion conflicted with that of a nonexamining

PAGE 17 – OPINION AND ORDER

physician, and the ALJ supported his decision with specific and legitimate reasons."). The ALJ did so here.

First, the ALJ discounted Dr. McHan's opinion evidence on the ground that it was inconsistent with McClung's reported activities. (*See* Tr. 26, "I also compare [Dr. McHan's] examination to the record which reveals the claimant often walks up to a mile to get to town where he then walks further to collect cans. This accentuates the inconsistencies in this opinion.") A conflict between a doctor's opinion and a claimant's activities is a specific and legitimate reason for discounting the doctor's opinion. *Gontes v. Astrue*, 913 F. Supp. 2d 913, 924 (C.D. Cal. 2012). It was reasonable for the ALJ to conclude that Dr. McHan's opinion conflicted with McClung's activities. Dr. McHan opined that McClung's "walking capacity is less than two hours" (Tr. 325), yet McClung reported being far less impaired. (*See* Tr. 48-53, indicating that McClung collects cans "[a]t least four or five days a week," which takes several hours and requires him to walk a mile into town, Tr. 648, reporting that McClung "walks about [fifteen] miles daily," Tr. 693, reporting that McClung "walks . . . about '[thirty] miles per day'").

Second, the ALJ discounted Dr. McHan's opinion evidence because it was inconsistent with "the record as a whole," including "the physical findings of Dr. McHan's own examination of the claimant." (Tr. 26.) A conflict between a doctor's opinion and his own examination findings is a specific and legitimate reason to discount his opinion. *See Lawrence v. Colvin*, No. 15–cv–00098, 2016 WL 1445300, at *7 (D. Nev. Feb. 11, 2016) ("A conflict between a physician's opinion and his clinical findings is a specific and legitimate reason to discount the physician's opinion."). Here, the ALJ noted that Dr. McHan opined that McClung is quite limited in his ability to walk and stand, yet the examination revealed that McClung was "able to

squat, crawl, and hop," McClung had full motor strength in his lower extremities and full range of motion in his back, neck, knees, and hips, and McClung's straight left tests were negative. (Tr. 26.) It was reasonable for the ALJ to interpret these findings as inconsistent with the degree of limitation assessed by Dr. McHan.

Third, the ALJ rejected Dr. McHan's opinion evidence in favor of the state agency medical consultants' conflicting opinions. (*See* Tr. 26-27, assigning less weight to Dr. McHan's opinion because it was inconsistent with the record as a whole, and then proceeding to assign significant weight to the consultants who opined that McClung is capable of performing light exertion level work because those opinions are consistent with the objective record evidence). The state agency doctors' conflicting opinions regarding McClung's functional limitations, coupled with the other reasons described above, constitutes substantial evidence necessary to affirm the ALJ's rejection of Dr. McHan's opinion evidence. *See, e.g., Morford v. Colvin*, No. 6:15–cv–01216–SB, 2016 WL 3092109, at *8 (D. Or. June 1, 2016) (stating that a non-examining doctor's opinion, coupled with other reasons provided by the ALJ, constituted "the substantial evidence necessary to affirm the ALJ's rejection" of another doctor's opinion evidence).

For these reasons, the Court finds that the ALJ's rejection of Dr. McHan's residual functional capacity assessment was supported by substantial evidence and, therefore, should not be disturbed on appeal.

///

///

///

///

## CONCLUSION

For the reasons stated, the Court affirms the Commissioner's decision because it is free of legal error and supported by substantial evidence.

IT IS SO ORDERED.

DATED this 23rd day of August, 2017.

*Stacie F. Beckerman*
_____
STACIE F. BECKERMAN
United States Magistrate Judge